```
          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

FILED
00 NOV 21 AM 11:16
U.S. DISTRICT
N.D. OF ALA

| | | |
|---|---|---|
| LISA KELLEY, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | CV-00-H-0051-S |
| SUNGARD BUSINESS SYSTEMS, INC., D/B/A SUNGARD MAILING SERVICES, | ) ) ) | |
| DEFENDANT. | | |

ENTERED
NOV 21 2000

### MEMORANDUM OF DECISION

The Court has before it the September 7, 2000 motion of defendant Sungard Business Systems, Inc. d/b/a Sungard Mailing Services ("Sungard") for summary judgment.[1] Pursuant to the Court's September 8, 2000 order, the motion was deemed submitted, without oral argument, on October 6, 2000.

### I. Procedural History

Plaintiff Lisa Kelley commenced this action on December 2, 1999 by filing a complaint in the Circuit Court of Jefferson County, Alabama alleging that defendant wrongfully terminated plaintiff "due to her illness and resulting leave of absence" and

---

[1] Also pending before this Court is the defendant's November 9, 2000 motion to strike plaintiff's evidentiary submission and plaintiff's memorandum brief and defendant's November 16, 2000 motion to withdraw its motion to strike. Both of these motions are **DENIED AS MOOT**.



made misrepresentations to plaintiff concerning her employment status. (See Compl. ¶ 16, 23.) Plaintiff contends that defendant's alleged conduct constitutes (1) discrimination under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and (2) misrepresentation and/or fraud under Alabama state law.[2] (See Compl. Counts I, II.) Defendant Sungard filed an answer on January 7, 2000, an amended answer on March 15, 2000, and a second amended answer on April 5, 2000. (See Def.'s Answer, Am. Answer, Second Am. Answer.)

On January 7, 2000, Sungard removed plaintiff's action to this court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (See Def's Notice of Removal.)

Defendant's September 7, 2000 motion for summary judgment asserts that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law. (See Def.'s Mot. Summ. J.)

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the pending

---

[2] Although a substantial amount of the material submitted by plaintiff and the facts articulated in plaintiff's brief relate to whether plaintiff is due disability insurance, that issue is not before the court on the pleadings and material relating to that issue is not relevant to this decision.

2

motion for summary judgment.  On September 7, 2000, defendant submitted evidence[3] in support of the motion and also filed a supporting memorandum of law.  Plaintiff submitted evidence[4] in opposition to the motion on October 27, 2000 and filed an opposing brief on November 3, 2000.

---

[3] Defendant submitted the June 23, 2000 deposition of Lisa Kelley; and the plaintiff's complaint filed December 2, 1999.

[4] Plaintiff submitted the Sungard Business Systems, Inc. Employee Information Book; the August 1, 1997 letter from Edwina Zales, VP Human Resources at Sungard to Lisa Arlene Kelley; the documents and decision of the Department of Industrial Relations regarding Lisa Kelley's unemployment benefits; the December 7, 1998 letter from Dr. Charles Svensson to Whom It May Concern; the August 7, 1998 letter from Debi Sisson, Human Resources Administrator at Sungard to Lisa A. Kelley with attachments; the May 12, 1998 letter from Debi Sisson to Lisa A. Kelley; the May 12, 1998 letter from Debi Sisson to Lisa A. Kelley with alterations; the attending physician's statement of disability completed by Dr. Charles Svensson; the February 24, 1998 letter from Dr. Selina Lin to Whom It May Concern; the August 21, 1998 work release from Dr. Charles Svensson; the May 8, 1998 request for maternity leave for Lisa Kelley from Dr. Charles Svensson; the May 12, 1998 Employer Response to Employee Request for Family or Medical Leave; the July 15, 1998 application of Lisa Kelley for insurance for child; the July 17, 1998 letter from Debi Sisson to Provident Life Insurance Company; the May 11, 1998 Sungard Business Systems, Inc. earnings statement of Lisa Arlene Kelley; the Sungard Benefit Election and Pre-tax Election Form completed by Lisa A. Kelley; the August 7, 1998 notice of termination of Lisa A. Kelley effective August 3, 1998; the December 30, 1997 Employee Change of Address Form completed by Lisa Arlene Kelley; the August 1, 1997 letter from Edwina J. Zales to Lisa Arlene Kelley; the August 1, 1997 Employment Application for Sungard Data Systems, Inc. and its Subsidiaries completed by Lisa A. Kelley; and the June 23, 2000 deposition of Lisa Kelley.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such

4

that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this

method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[5]

Defendant hired plaintiff as a part time employee in April of 1997, and in August of 1997 plaintiff became a full-time employee with Sungard. (See Dep. of Lisa Kelley 24.) Plaintiff's duties included working in the co-mingling area where she sorted mail. (See id. at 25.) In April of 1997, plaintiff received defendant's Employee Information Handbook which provided information regarding plaintiff's rights under the Family and Medical Leave Act and her short-term and long-term disability insurance. (See id. at 40-41, 183-184.) The Employee Handbook explained the twelve-week leave policy and cautioned that "[e]mployees who are unable to return to work after twelve weeks of leave will not be guaranteed reinstatement to their original or equivalent position. When the employee is able to return to work, the Company will make every effort to place the employee in an equivalent position; however, the Company is not obligated to do so." (Pl.'s Evid. Submission Ex. 1 at 12; see also Dep. of Lisa Kelley 183.)

Plaintiff informed Jim Becker of Sungard when she first discovered that she was pregnant and during that conversation,

---

[5] If facts are in dispute, they are stated in the manner most favorable to the plaintiff. See Fitzpatrick, 2 F.3d at 1115.

7

Mr. Becker told plaintiff that she had a week to ten days of vacation time. (See Dep. of Lisa Kelley 59-61.) In April of 1998, plaintiff informed B.J. Hawkins, her supervisor, that her doctor advised her not to lift anything heavier than five pounds due to her pregnancy. (See id. at 44-45.) On May 5, 1998, plaintiff was injured and was treated at Medical Center East for a laceration on her hand and did not return to work until May 8, 1998. (See id. 46-48, 55-56.)

After being seen by her prenatal doctor on May 8, 1998, plaintiff met with Debi Sisson, Human Resources Administrator for Sungard, and provided Ms. Sisson with a statement from her physician recommending that plaintiff begin her maternity leave immediately. (See id. at 48-51; Pl.'s Evid. Submission Ex. 11.) Plaintiff filled out some paperwork and Ms. Sisson told plaintiff that "[e]verything will be taken care of" and "as soon as everything was over with, I had the baby, bring a return to work slip back to work and they would have my----the job would still be there." (See Dep. of Lisa Kelley 71, 73.) On that same day, plaintiff took a leave of absence from Sungard due to pregnancy complications. (See id. at 246.) During plaintiff's meeting with Ms. Sisson on May 8, 1998, plaintiff informed Sisson that her due date was June 15, 1998. (See id. at 74.)

In May, plaintiff received a letter from defendant dated May

12, 1998 which informed plaintiff that her FMLA leave began on May 8, 1998, expired on July 31, 1998, and indicated that plaintiff was expected to return to work on August 3, 1998. (<u>See</u> <u>id.</u> at 182, 185-187, 242-247; Pl.'s Evid. Submission Exs. 6, 7.)

Plaintiff's child was delivered on July 10, 1998 and on July 13, 1998, plaintiff called Debi Sisson to add the baby to plaintiff's insurance. (<u>See</u> Dep. of Lisa Kelley 93, 98-99.) Ms. Sisson told plaintiff "[w]hen you get well, bring me the slip back to work and you can come back. Your job will be waiting on you." (<u>See</u> <u>id.</u> at 98-99.) During the July 13 phone conversation with Ms. Sisson, plaintiff did not tell Ms. Sisson when she would return to work. (<u>See</u> <u>id.</u> at 99.) An "Attending Physician's Statement of Disability" signed by plaintiff's doctor and sent to Sungard indicates that plaintiff was not advised to return to work until six weeks after delivery. (<u>See</u> Pl.'s Evid. Submission Ex. 8.)

Plaintiff testified that she took fifteen weeks of leave, (<u>see</u> Dep. of Lisa Kelley 184), and returned to Sungard on August 21, 1998 with a doctor's release to work and accompanied by her newborn child and her husband. (<u>See</u> Dep. of Lisa Kelley 110, 158; Pl.'s Evid. Submission Ex. 10.) On August 21, plaintiff spoke with Debi Sisson who told plaintiff that "her time had run out" and that she would need to come back on August 24, 1998 to

speak with Mr. Becker. (See Dep. of Lisa Kelley 110, 158-160, 163-165.) Plaintiff testified that Ms. Sisson told plaintiff that "she didn't think there would be any problem" once plaintiff spoke with Mr. Becker the following Monday. (See id. at 293-294.)

Plaintiff returned to work on August 24, 1998 to meet with Mr. Becker and was told by Debra McDaniel in Mr. Becker's office that Mr. Becker had nothing else to say to her and that she had been terminated. (See id. at 160-162.) An August 7, 1998 certified letter mailed to plaintiff and received by plaintiff on August 31, 1998 indicates that plaintiff was actually terminated effective August 3, 1998. (See id. at 250-251; Pl.'s Evid. Submission Ex. 5.)

### IV. Applicable Substantive Law and Analysis

As noted earlier, plaintiff's complaint contains the following claims: (1) discrimination under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and (2) misrepresentation and/or fraud under Alabama state law. (See Compl. Counts I, II.) Defendant's motion for summary judgment asserts that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law. (See Def.'s Mot. Summ. J.) The court will first address the federal claim under FMLA.

Plaintiff asserts a claim for discrimination under the FMLA alleging that defendant terminated her due to her fifteen-week leave of absence. (See Pl.'s Mem. Opp'n Summ. J. at 11, 14; Depo. of Lisa Kelley 184-185.) The FMLA guarantees qualified employees the benefit of leave time for certain health and family emergencies, 29 U.S.C. § 2612(2), including the birth, adoption, or foster care of a child and when the employee cannot "perform the functions of [her] position" because she suffers from a "serious health condition." 29 U.S.C. § 2612(a). Under the FMLA, an eligible employee is entitled to twelve work weeks of leave from her employer during any twelve-month period for the birth of a son or daughter. 29 U.S.C. § 2612(a)(1)(A)(1999). Upon returning to work, such an employee is entitled to be restored to the same or equivalent position that she held when the leave commenced. See 29 U.S.C. § 2612(a)(1)(A),(B)(1999). If an employer violates a provision or prohibition of the Act, the employee is entitled to maintain a private civil action. See 29 U.S.C. § 2617(1). However, an employee who takes more than twelve weeks of leave is not entitled to return to her former or equivalent position and is not deserving of protection under the FMLA. See McGregor v. Autozone, Inc., 180 F.3d 1305, 1308 (11th Cir. 1999).

In a case virtually identical to the one before this court,

11

the Eleventh Circuit affirmed the district court's decision granting summary judgment for defendant employer and held that "because plaintiff was absent for more than the [twelve week] protected period of time, she did not have a right to be restored to her prior or similar position." Autozone, 180 F.3d at 1308. In Autozone, the plaintiff alleged that she was entitled to be restored to her prior or equivalent position when she returned to work after the birth of her child and a fifteen-week absence. Id. at 1307. The district court noted and the Eleventh Circuit affirmed that because plaintiff took more than the twelve-week entitlement, "she does not have a case under FMLA, either for not restoring her to her position or for discriminating against her for taking leave." Cox v. Autozone, Inc., 990 F. Supp. 1369, 1381 (M.D. Ala. 1998), aff'd sub nom. McGregor v. Autozone, Inc., 180 F.3d 1305 (11th Cir. 1999).

In this case, plaintiff testified that she took fifteen-weeks of leave before returning to her job and admittedly surpassed the maximum number of weeks allowed by the Act. (See Depo. of Lisa Kelley 184-185.)

> Q: Isn't it true that you took fifteen weeks of leave?
> A: Yes.
> Q: You exceeded the number of weeks, that is the maximum number of weeks required by the Act; isn't that correct?
> A: Yes, only by doctor's orders.

(Id.)  Based on the Eleventh Circuit law articulated in Autozone, this court finds that plaintiff exceeded her allowable twelve weeks of leave under FMLA, is not entitled to the protection of FMLA, and therefore does not have a case against defendant for discriminating against her for taking leave.

In summary, the Court finds that no material issues of fact remain and that defendant Sungard is entitled to judgment as a matter of law as to the federal claim asserted by the plaintiff under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. A separate Final Judgment as to this claim will be entered. Pursuant to 28 U.S.C. § 1367(c)(3), the court will decline to exercise supplemental jurisdiction over the state law fraud/misrepresentation claim and a separate order remanding that claim to the Circuit Court for Jefferson County, Alabama will be entered.

DONE this 21st day of NOVEMBER, 2000.

_____
SENIOR UNITED STATES DISTRICT JUDGE